Entered: August 25th, 2021
Signed: August 25th, 2021



**MARIA ELLENA CHAVEZ-RUARK**
**U.S. BANKRUPTCY JUDGE**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### Greenbelt Division

| | |
|---|---|
| In re:<br><br>Mario Fernando Cisneros,<br><br>      Debtor. | Case Number: 21-12338-MCR<br>(Chapter 7) |

### MEMORANDUM OPINION REGARDING ORDER DENYING
### CREDITOR MARKETPRO SOUTH, INC.'S MOTION TO DISMISS CASE

Before the Court is a Motion to Dismiss [Dkt. No. 20] (the "Motion to Dismiss") filed by MarketPro South, Inc. (the "Movant"). The Motion to Dismiss seeks to dismiss the above-captioned bankruptcy case pursuant to Section 707(a) of the United States Bankruptcy Code (the "Bankruptcy Code") for the alleged lack of good faith by Mario Fernando Cisneros (the "Debtor") in filing for bankruptcy relief under Chapter 7. The Debtor filed an opposition to the Motion to Dismiss [Dkt. No. 21] (the "Opposition"), and the Court held a hearing on the Motion to Dismiss and the Opposition on August 24, 2021. The Court has considered the Motion to Dismiss, the Opposition, the entire record in this case, the exhibits admitted at the hearing, the Debtor's testimony at the hearing, the arguments of counsel at the hearing and applicable law. For the following reasons, the Motion to Dismiss will be denied.

**I.      BACKGROUND**

The material facts are not in dispute.

On April 8, 2021 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code along with his Schedules and Statement of Financial Affairs.[1] Petition, Schedules and Statement [Dkt. No. 1]. The Chapter 7 Trustee held the meeting of creditors under Section 341 of the Bankruptcy Code on May 12, 2021. Notice of Case [Dkt. No. 8]. On May 13, 2021, the Chapter 7 Trustee filed his Report of No Distribution stating that he "made a diligent inquiry into the financial affairs of the Debtor" and "that there is no property available for distribution from the estate over and above that exempted by law." Report [Dkt No. 18]. The Debtor's bankruptcy case was thereafter designated a "no asset" bankruptcy case based on the Chapter 7 Trustee's report.

On July 12, 2021, the Movant filed the Motion to Dismiss, arguing the case should be dismissed because the Debtor has acted in bad faith. Motion to Dismiss [Dkt. No. 20] (hereinafter cited as "Motion"). The Movant's claim is based on a lawsuit it filed against the Debtor in the Superior Court of the District of Columbia, Case No. 2019 CA 002235B, based on the Debtor's alleged breach of contract with the Movant and other tort claims (the "D.C. Lawsuit"). Motion at ¶ 2. It appears that the Debtor filed his bankruptcy case prior to the D.C. Lawsuit's adjudication. Motion at ¶¶ 2-4. The Debtor listed the Movant's claim in his schedule of general unsecured claims in the amount of $75,000 and listed the claim as "disputed." Sch. E/F [Dkt. No. 1] at p. 3.

---

[1] At the same time, the Debtor also filed his Statement of Current Monthly Income and Statement of Exemption from Presumption of Abuse Under § 707(b)(2), which indicates that the Debtor's debts are primarily non-consumer debts. Because the Debtor's debts are primarily non-consumer in nature, the abuse provision of Section 707(b) does not apply. 11 U.S.C. § 707(b) and Debtor's Statement of Exemption from Presumption of Abuse under § 707(b)(2) [Dkt. No. 5].

The Movant attached six exhibits to its Motion to Dismiss as purported support for its allegation that the Debtor has acted in bad faith.  *See* Motion, Exhs. A-F.  Exhibit A to the Motion to Dismiss consists of the Debtor's Schedule E/F, which identifies all of the Debtors priority and general unsecured claims, including the Movant's claim in the amount of $75,000.  Exhibit B appears to be an undated and incomplete copy of a transcript from the Debtor's meeting of creditors on May 12, 2021.  Exhibit C is an excerpt from the Debtor's Schedule A/B containing a summary of the Debtor's assets and reflecting a total value of $507,842.98 for all of the Debtor's real and personal property.  Exhibit D is the first page of the Debtor's Summary of Assets and Liabilities reflecting total assets of $507,842.98, total liabilities of $105,145.50, monthly income of $5,230.43 and monthly expenses of $7,794.  Exhibit E is the first page of the Debtor's Schedule I showing his employment information and gross monthly income of $0.  Exhibit F is an incomplete copy of an email sent from the Chapter 7 Trustee to the Movant's counsel on May 13, 2021, stating that payments made to the law firm of Vida Law, LLC were made by the Debtor's spouse and not by the Debtor, that he would not be pursuing a preference claim against the law firm and that he would not be pursuing another transfer made in 2016 because it was outside the statute of limitations.  Exhibit F concludes with the Chapter 7 Trustee stating, "[i]t does not appear that there are any assets in these [sic] case to administer or any further action for me to take."  Motion, Exh. F (email).

With these documents as support, the Movant argues in the Motion to Dismiss that "the record demonstrates that Debtor filed the instant Chapter 7 petition solely to frustrate [the Movant]."  Motion at ¶ 19.  More specifically, the Movant argues in the Motion to Dismiss that the case should be dismissed because (i) "Debtor is solvent and is not entitled to a no-asset Chapter 7 discharge," (ii) "Debtor has material income" as evidenced by his testimony at the meeting of creditors, and (iii) the Debtor's "only substantial debt is a potential contested litigation-based claim that has not even matured into a judgment yet."  Motion at p. 1.  The Motion to Dismiss reviews

the eleven factors adopted by this Court in *In re Wilson* in determining whether a Chapter 7 case should be dismissed as a bad faith filing (discussed in more detail below) and closes by stating, "[t]he totality of the circumstances demonstrate that Debtor filed his instant no asset Chapter 7 petition in bad faith and it should be dismissed." Motion at ¶ 25.

The Opposition maintains that "the Debtor responded accurately and truthfully in his bankruptcy Schedules and his Statement of Financial Affairs" and explains that the Debtor, who is self-employed as a draftsman in a sole proprietorship, was not owed any money for previously completed jobs and had "no concrete prospects of any additional new draftsman work on the Petition Date." Opposition [Dkt. No. 21] (cited hereinafter as "Opposition") at ¶¶ 3 and 12. The Opposition further points out that any post-petition earnings by the Debtor would not be property of his bankruptcy estate and that, despite repeated assertions in the Motion to Dismiss that the Debtor filed a "no asset Chapter 7 Petition," it was the Chapter 7 Trustee – not the Debtor – who made the determination that the Debtor's case was a "no asset case." Opposition at ¶¶ 16 and 20. The Debtor argues that he has not concealed or misrepresented any assets or sources of income; that his Schedules were truthful, complete and accurate to the best of his abilities and knowledge; and that he responded truthfully when questioned at the meeting of creditors. Opposition at ¶¶ 25-26. The Opposition argues that the *Wilson* factors do not support dismissal, the Debtor's bankruptcy petition was filed in good faith and the Movant has failed to establish anything to the contrary. *See generally* Opposition at ¶¶ 23-39.

The Court notes that the Movant has not filed a motion to take the Debtor's oral examination pursuant to Bankruptcy Rule 2004, a complaint objecting to the Debtor's discharge under Section 727 and/or a complaint seeking a determination that its debt is not dischargeable under Section 523. The Court also notes that the time to take any of these actions has passed

because the deadline to file a complaint was July 12, 2021. Consequently, to the extent the Movant has a claim against the Debtor, the Movant has a dischargeable general unsecured claim.

## II. ANALYSIS

### A. Standard for Dismissal Under Section 707(a)

The Motion to Dismiss seeks relief under Section 707(a), which provides:

> (a) The court may dismiss a case under this chapter only after notice and a hearing and only for cause, including--
>
> (1) unreasonable delay by the debtor that is prejudicial to creditors;
>
> (2) nonpayment of any fees or charges required under chapter 123 of title 28; and
>
> (3) failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521(a), but only on a motion by the United States trustee.

11 U.S.C. § 707(a). The three illustrative grounds for dismissal contained in Section 707(a) are non-exclusive. 11 U.S.C. § 102(3) ("'includes' and 'including' are not limiting"); *McDow v. Smith*, 295 B.R. 69, 74 (E.D. Va. 2003) ("'Cause' is not expressly defined in § 707(a); stated instead are three non-exclusive, illustrative grounds for dismissal.").

The United States Court of Appeals for the Fourth Circuit recently agreed with the majority of circuit courts and ruled that a debtor's bad faith in filing for bankruptcy relief may constitute cause for dismissal under Section 707(a). *Janvey v. Romero*, 883 F.3d 406, 412 (4th Cir. 2018). The Court reasoned that the "majority view is the sounder one, because it is the most helpful in preventing serious abuses of the bankruptcy process." *Id.* "But acknowledging that bad faith may constitute 'cause' under § 707(a) also requires that the remedy of dismissal be reserved for cases of real misconduct." *Id.* "In short, bad faith exists only where 'the petitioner has abused the provisions, purpose, or spirit of bankruptcy law.'" *Id.* (quoting *Tamecki v. Frank (In re Tamecki)*,

229 F.3d 205, 207 (3d Cir. 2000)).  This Court has previously determined that dismissal for bad faith under Section 707(a) should be used sparingly and reserved for egregious cases.  *In re Wilson*, 12-32715-WIL, 2016 WL 1254637, at *5 (Bankr. D. Md. Mar. 30, 2016).

    **B.**    **Application of *Janvey* to This Case**

In this case, the Court has reviewed the entire record and considered the testimony of the Debtor and the six exhibits admitted at the hearing.  Simply put, the Court finds that the Motion to Dismiss has no evidentiary support whatsoever.  Not only are the allegations in the Motion to Dismiss unsubstantiated, but the Motion to Dismiss is also rife with misunderstandings of basic bankruptcy principles.  For example, the Movant does not appear to understand that a Chapter 7 debtor does not elect to file a "no asset" bankruptcy case, a Chapter 7 debtor's postpetition earnings are not property of the debtor's bankruptcy estate or used to pay claims and a debtor is required to schedule a litigation claim regardless of whether it has been liquidated by a court.

The Movant argues that, because the Debtor's "only substantial debt is a potential contested litigation-based claim that has not even matured into a judgment yet, Debtor's instant bankruptcy is at best very premature and should be dismissed."  Motion at p. 1.  The Movant also argues that the Debtor's alleged debt to the Movant "is about 86% of all unsecured claims minus a PPP loan that Debtor will likely have forgiven."  *Id*.  The fact that a bankruptcy petition was filed in response (or largely in response) to a single debt does not, by itself, constitute bad faith.  As stated by the Fourth Circuit:

> "Almost every bankruptcy case is filed because a creditor is pursuing a debtor."  *Id.* (quoting *In re Bushyhead*, 525 B.R. 136, 149 (Bankr. N.D. Okla. 2015)).  The purpose of bankruptcy law, after all, "is to provide a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy 'a new opportunity in life.'"  *Grogan*, 498 U.S. at 286, 111 S. Ct. 654 (quoting *Local Loan Co.*, 292 U.S. at 244, 54 S. Ct. 695).  A person becomes insolvent when he is no longer able to meet his financial obligations as they become due.  *See* 11 U.S.C. § 101(32)(A).  This

> may happen over time, or it may happen very suddenly. But in every case, the debtor reaches a tipping point. That may well happen because of a single additional debt. And that debt may be either large or small. It may be the result of litigation, or it may be the product of a large hospital bill or a decline in the housing market. Regardless, equating a decision to file for bankruptcy in response to a sizeable debt with cause for dismissal would fault debtors for using the Code in precisely the way Congress intended. As one bankruptcy court has observed, "if filing bankruptcy to avoid the payment of a debt was cause for dismissal, no debtor would ever be able to file a bankruptcy case." *In re Uche*, 555 B.R. 57, 62 (Bankr. M.D. Fla. 2016).

*Janvey v. Romero*, 883 F.3d 406, 414-15 (4th Cir. 2018).

The Court also rejects Movant's argument that "Debtor is solvent and is not entitled to a no-asset Chapter 7 discharge" because his assets exceed his liabilities. Motion at p. 1 and ¶ 14. As stated above, "a person becomes insolvent when he is no longer able to meet his financial obligations as they become due." *Janvey v. Romero*, 883 F.3d at 414 (citing 11 U.S.C. § 101(32)(A)). "Were absolute depletion of one's assets a prerequisite for bankruptcy relief, debtors and their families would be left destitute and without the means to become productive members of society." *Janvey v. Romero*, 883 F.3d at 416. The Court will again quote from the Fourth Circuit's *Janvey* decision:

> Forcing a debtor to repay his debts using exempt assets before resorting to bankruptcy would also undercut the entire exemption scheme that Congress designed. The "historical purpose" of bankruptcy exemptions "has been to protect a debtor from his creditors, to provide him with the basic necessities of life so that even if his creditors levy on all of his nonexempt property, the debtor will not be left destitute and a public charge." H.R. Rep. No. 95-595, at 126. Bankruptcy exemptions are meant to "afford the debtor some economic and social stability, which is important to the fresh start guaranteed by bankruptcy." *In re Morehead*, 283 F.3d 199, 203 (4th Cir. 2002). They represent a careful balance of "the difficult choices that exemption limits impose on debtors with the economic harm that exemptions visit on creditors." *Schwab v. Reilly*, 560 U.S. 770, 791, 130 S. Ct. 2652, 177 L.Ed.2d 234 (2010).

*Janvey v. Romero*, 883 F.3d at 417.

The Movant's arguments that the Debtor's case should be dismissed because "Debtor has material income," Motion at p. 1, and "Debtor clearly concealed and/or misrepresented his assets and sources of income, and also demonstrated lack of candor and completeness in his statements and schedules," Motion at ¶ 15, are similarly unpersuasive. At the hearing on the Motion to Dismiss, when pressed by the Court to specify the facts in support of dismissal, the Movant stated that dismissal is appropriate because (i) the Debtor stated in Schedule I that his monthly income as of the Petition date was $0, (ii) the Debtor stated in his Statement of Financial Affairs that his year-to-date gross income as of the Petition Date was $5,950 even though his annual income was approximately $86,000 in 2019 and he receives an average of $1,400 per job, and (iii) the Debtor testified at the meeting of creditors approximately five weeks after the Petition Date that his year-to-date gross income as of that date was $22,000. The Movant argues that all of these things could not possibly be true and therefore the Debtor must have been untruthful under oath.

It is clear to the Court that the Movant is confusing the Debtor's reports of gross income versus net income and that the Movant is misunderstanding the relevance of the timing of each report as of the Petition Date versus year-to-date. The Debtor's testimony at the hearing was clear that, on the Petition Date, his income was $0, he had no outstanding accounts receivable and he had serious concerns (due mostly to the COVID-19 pandemic) whether and when he would get another drafting job. His monthly income, considering all sources of income as of the Petition Date, was $0. The Schedules are intended to provide a snapshot of the Debtor's financial condition as of the Petition Date, and the Court concludes that the Debtor was truthful in his Schedule I regarding his monthly income as of the Petition Date. The Court also concludes the Debtor was truthful in his Statement of Financial Affairs and in his testimony at the meeting of creditors when he testified about his income as of the Petition Date and as of the meeting of creditors. At the hearing, the Debtor testified in clear and unambiguous terms that his year-to-date gross income

and net income as of the Petition Date were approximately $9,000 and $5,950, respectively.  The Debtor testified that, although Question #4 in the Statement of Financial Affairs requests "gross income" as of the Petition Date, he provided his "net income" as of the Petition Date in response to that question.  The Court finds this difference to be nonmaterial and does not find the Debtor's annual income in 2019, *i.e.*, $86,000, probative on this issue as urged by the Movant.  Finally, the Court accepts the Debtor's testimony that his year-to-date gross income as of the meeting of creditors, approximately five weeks after the Petition Date, was $22,000.  As stated in the Motion to Dismiss, the Debtor also testified at the meeting of creditors that he paid approximately $7,000 to subcontractors, leaving him with a net income of approximately $15,000.  Motion at ¶ 12.  The Debtor's testimony on this issue at the hearing was consistent with his testimony at the meeting of creditors, and the Court finds the Debtor's testimony credible.  The Movant's speculation and innuendo regarding the Debtor's income is not well received by the Court, especially in light of the widely known economic impact of the pandemic, the lack of any evidence presented by the Movant to contradict the Debtor's testimony and the relative unimportance of the Debtor's income because he is in a Chapter 7 bankruptcy proceeding.  The Movant's contention that "the record demonstrates that Debtor filed the instant Chapter 7 petition solely to frustrate [the Movant]," Motion at ¶ 19, is wholly without merit.

      Again, the Court notes that the Movant had several avenues available to it – taking the Debtor's oral examination pursuant to Bankruptcy Rule 2004, objecting to the Debtor's discharge under Section 727 and/or seeking a determination that its debt is not dischargeable under Section 523 – and chose to pursue neither of them.  Although these remedies are not mutually exclusive with the filing of a motion to dismiss the case, the Court finds the Movant's choice of a motion to dismiss to be curious and unhelpful to the Movant.

This Court takes the Movant's allegations of misconduct seriously because a debtor's good faith is the cornerstone of the bankruptcy process. However, as stated by the Fourth Circuit, the Movant must show bad faith by the Debtor, and "bad faith exists only where 'the petitioner has abused the provisions, purpose, or spirit of bankruptcy law.'" *Janvey v. Romero*, 883 F.3d at 412 (quoting *Tamecki*, 229 F.3d at 207). As previously stated by this Court, dismissal for bad faith under Section 707(a) should be used sparingly and is reserved for egregious cases. *In re Wilson*, 12-32715-WIL, 2016 WL 1254637, at *5 (Bankr. D. Md. Mar. 30, 2016). The Movant has not put forth any evidence to contradict the Debtor's testimony or demonstrate that the Debtor has abused the provisions, purpose or spirit of bankruptcy law and the bankruptcy process.

    **C.**    **Application of *Wilson* Factors to This Case**

In *Wilson*, this Court stated that "a debtor's bad faith acts or omissions may, in the totality of the circumstances, constitute cause for dismissal under § 707(a)" and set forth eleven factors that the Court should consider in determining whether a debtor lacked good faith in filing his case. *Wilson* at *5 (citing *McDow v. Smith*, 295 B.R. 69, 74 and 79 n.22 (E.D. Va. 2003)). *See also In re Romero*, 557 B.R. 875, 881 (Bankr. D. Md. 2016) (adopting eleven *McDow* factors). The Movant bears the burden of demonstrating the Debtor's bad faith as cause for dismissal under Section 707(a). *In re Evatt*, 497 B.R. 483, 487 (Bankr. D.S.C. 2013).

The eleven *Wilson* factors, which the Court must consider under a totality of the circumstances test, are:

(1)     The debtor's concealment or misrepresentation of assets and/or sources of income, such as the improper or unexplained transfers of assets prior to filing;

(2)     The debtor's lack of candor and completeness in his statements and schedules, such as the inflation of his expenses to disguise his financial well-being;

(3)     The debtor has sufficient resources to repay his debts, and leads a lavish lifestyle, continuing to have excessive and continued expenditures;

(4)       The debtor's motivation in filing is to avoid a large single debt incurred through conduct akin to fraud, misconduct, or gross negligence, such as a judgment in pending litigation, or a collection action;

(5)       The debtor's petition is part of a "deliberate and persistent pattern" of evading a single creditor;

(6)       The debtor is "overutilizing the protection of the Code" to the detriment to his creditors;

(7)       The debtor reduced his creditors to a single creditor prior to filing the petition;

(8)       The debtor's lack of attempt to repay creditors;

(9)       The debtor's payment of debts to insider creditors;

(10)     The debtor's "procedural gymnastics" that have the effect of frustrating creditors; and

(11)     The unfairness of the debtor's use of the bankruptcy process.

*Wilson* at *5 (citing *McDow v. Smith*, 295 B.R. 69, 74 and 79 n.22 (E.D. Va. 2003)).  The Court will examine each factor in turn.

The first factor – whether the Debtor's concealed or misrepresented his assets and/or sources of income, such as the improper or unexplained transfers of assets prior to filing – and the second factor – whether the Debtor lacked candor and completeness in his statements and schedules, such as the inflation of his expenses to disguise his financial well-being – are the only factors that arguably may lend any support to the Movant's arguments.  In response to Question #4 of his Statement of Financial Affairs, the Debtor misstated that his year-to-date income of $5,950 was gross income instead of net income.  Other than this, there is not even a hint of a misrepresentation or lack of completeness with regard to the Debtor's assets and income, and the Court finds the Debtor's error in this regard to be inadvertent and nonmaterial.  The sole evidence before the Court regarding the Debtor's assets and income – derived from the Debtor's testimony at the hearing, the Debtor's testimony at the meeting of creditors and the Debtor's sworn statements in his Schedules and Statement of Financial Affairs – is uncontroverted.

The third factor, *i.e.*, whether the Debtor has sufficient resources to repay his debts and leads a lavish lifestyle and continues to have excessive and continued expenditures, does not support dismissal. The fair market value of the Debtor's assets, as set forth in his Schedule A/B, totals $507,842.98. The Debtor claimed most of his assets as exempt either as tenants by the entireties property or under the Annotated Code of Maryland, and the time to challenge the Debtor's exemptions has passed. Moreover, the Chapter 7 Trustee, who is charged with the responsibility of investigating the Debtor's assets and liquidating non-exempt assets to pay creditors, concluded that he "made a diligent inquiry into the financial affairs of the debtor(s) and the location of the property belonging to the estate; and that there is no property available for distribution from the estate over and above that exempted by law." Report [Dkt. No. 18]. The Trustee also certified, pursuant to Bankruptcy Rule 5009, that the Debtor's bankruptcy estate "has been fully administered." *Id.* As stated above, the Debtor's exemptions serve the valuable purpose of ensuring he is not left destitute as a result of the bankruptcy. Although the Debtor has exempt assets, there is no evidence that the Debtor has sufficient resources to repay his debts, leads a lavish lifestyle or has excessive expenditures.

The fourth factor – whether the Debtor's motivation in filing his case was to avoid a large single debt incurred through conduct akin to fraud, misconduct or gross negligence, such as a judgment in pending litigation or a collection action – lends no support to the Motion to Dismiss. As discussed above, the filing of a bankruptcy petition in response to a single debt does not, by itself, constitute bad faith. Obtaining relief from creditors and gaining a fresh start are the very bedrock on which the bankruptcy process is founded. "The purpose of bankruptcy law, after all, 'is to provide a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy a new opportunity in life.'" *Janvey v. Romero*, 883 F.3d at 414-15 (quoting *Grogan v. Garner*, 498 U.S. 279, 286 (1991) and *Local Loan Co. v. Hunt*, 292 U.S. 234,

244 (1934)). "[E]quating a decision to file for bankruptcy in response to a sizeable debt with cause for dismissal would fault debtors for using the Code in precisely the way Congress intended." *Janvey v. Romero*, 883 F.3d at 415. "[I]f filing bankruptcy to avoid the payment of a debt was cause for dismissal, no debtor would ever be able to file a bankruptcy case." *Id.* (quoting *In re Uche*, 555 B.R. 57, 62 (Bankr. M.D. Fla. 2016)).

The fifth factor, *i.e.*, whether the Debtor's petition is part of a deliberate and persistent pattern of evading a single creditor, has not been demonstrated here. The fact that the Debtor disputed the Movant's claim lends no support in favor of this factor, and the Movant has offered no evidence in support of this factor.

The sixth factor is whether the Debtor is overutilizing the protection of the Code to the detriment of his creditors. Notwithstanding the Movant's argument in the Motion to Dismiss that "the record demonstrates that Debtor filed the instant Chapter 7 petition solely to frustrate [the Movant]," Motion at ¶ 19, there is no evidence to support this statement. There is nothing to indicate that the Debtor has done anything other than what the Bankruptcy Code allows him to do, that is, file a bankruptcy proceeding to obtain a fresh start and relief from his creditors.

The seventh factor – whether the Debtor reduced his creditors to a single creditor prior to filing the petition – has no weight here. The record confirms that the Movant is not the Debtor's only creditor. The Debtor scheduled six general unsecured claims on his Schedule E/F. One is for a Paycheck Protection Program (PPP) loan for $17,900 which the Debtor expects will be forgiven, two are for credit cards totaling $7,700, two are for legal expenses relating to the Debtor's litigation with the Movant totaling $4,545 and one is the Movant's claim in the amount of $75,000. Even if the PPP loan is disregarded, it remains clear that there are creditors other than the Movant.

The eighth factor is whether the Debtor attempted to repay his creditors. Although the Opposition states that the Debtor and the Movant engaged in settlement discussions (including a mediation) that were unsuccessful, neither party presented any evidence on this factor.

The ninth factor is whether the Debtor paid insider creditors. The Movant presented no evidence on this factor.

The tenth factor, *i.e.*, whether the Debtor engaged in "procedural gymnastics" that had the effect of frustrating creditors, does not support dismissal. The Movant presented no evidence on this factor, and the Court notes that this Chapter 7 proceeding advanced expeditiously and was delayed, if at all, only by the Motion to Dismiss.

The eleventh and final factor is whether the Debtor's use of the bankruptcy process has been unfair. For the reasons stated above, the Court concludes that the Debtor fairly used the bankruptcy process in the manner in which it was intended by Congress.

Although the first two factors may appear to be relevant at first glance, even a cursory review of the facts confirms they provide no support for dismissal of the Debtor's case. The remaining nine factors are not relevant because there was no evidence to support them or they weigh against dismissal.

### D.   Propriety of Motion to Dismiss

Finally, the Court wants to address the propriety of the filing of the Motion to Dismiss. The allegations contained in the Motion to Dismiss simply do not warrant the severe sanction of dismissal under Section 707(a). The only scintilla of any potential omission or misrepresentation by the Debtor relates to the statement of his gross income in response to Question #4 of the Statement of Financial Affairs, and as discussed above, the Court finds the Debtor's error in stating his net income instead of his gross income to be inadvertent and nonmaterial. Although the Debtor's income certainly warranted inquiry at the meeting of creditors, the explanation provided

in the Opposition that Debtor did not have any outstanding receivables as of the Petition Date and his future prospects were uncertain should have satisfied the Movant and most certainly could have been obtained without resorting to filing the Motion to Dismiss.  At the very least, the explanation set forth in the Opposition should have led to the withdrawal of the Motion to Dismiss.  Instead, the Movant has forced the Debtor to expend funds replying to a baseless motion and preparing for a hearing.

Although the Court declines to impose sanctions against the Movant as a result of the Motion to Dismiss, the Court reminds the Movant and its counsel that allegations of bad faith and misconduct are powerful statements and hot button issues for the Court.  If the Movant and/or its counsel make such allegations again, whether in this case or another, the Court cautions them to make sure they have evidentiary support for the allegations.  Otherwise, the Court may impose sanctions under Bankruptcy Rule 9011, Bankruptcy Code Section 105(a) and the Court's inherent powers for bad faith conduct that offends the legal process.  *Am. Sci. & Eng'g, Inc. v. Autoclear, LLC*, 606 F. Supp. 2d 617, 620 (E.D. Va. 2008).[2]

### III.    CONCLUSION

For the reasons set forth above, the Court will deny the Motion to Dismiss.  An order consistent with this Memorandum will be issued contemporaneously herewith.

cc:    Debtor
       Debtor's Counsel
       Movant
       Movant's Counsel
       Chapter 7 Trustee
       Office of the U.S. Trustee
       Creditors and parties in interest entitled to notice via CM/ECF

**END OF MEMORANDUM OPINION**

---

[2] At a hearing held on August 11, 2021 in another case, this Court admonished the Movant's counsel that filing pleadings alleging misrepresentation and bad faith must have evidentiary support or they may be met with sanctions.